UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROSA MARIA FLORES,<br><br>    Plaintiff,<br><br>v.<br><br>ERNESTO FLORES ANGUIANO,<br><br>    Defendant.<br><br>―――――――――――――――――<br><br>ERNESTO FLORES ANGUIANO,<br><br>    Third-Party Plaintiff,<br><br>v.<br><br>ROCIO BROWN,<br><br>    Third-Party Defendant. | Case No. 4:22-cv-00498-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiff's Motion for Preliminary Injunction (Dkt. 13) and Motion to Strike (Dkt. 43). The Court heard oral argument on these motions on May 15, 2023, and took them under consideration. Also before the Court is Defendant's Motion for Summary Judgment (Dkt. 56) and Motion for Entry of Judgment (Dkt. 66). The Court finds no reason to hold a hearing on these two motions and will decide them on the briefing. *See* Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). All four motions are ripe for adjudication.

Upon review and for the reasons outlined below, Plaintiff's Motion to Strike and

Motion for Preliminary Injunction are DENIED as MOOT. Defendant's Motion for Entry of Judgment is GRANTED and his Motion for Summary Judgment is GRANTED in part. The Court also GRANTS partial summary judgment in Plaintiff's favor as explained below.

## II. BACKGROUND

### A. Factual Background

Plaintiff Rosa Maria Flores ("Rosa")[1] was born in Mexico and emigrated to the United States as a child. In November 1999, she secured a visa that allowed her to seek status as a lawful permanent resident under 8 U.S.C. § 1255(i). In 2009, she married Defendant Ernesto Flores Anguiano ("Ernesto"), who secured a second visa for her. Rosa then filed a residency application for a "green card."

The Immigration and Nationality Act forbids the admission of any immigrant who "is likely at any time to become a public charge"—that is, likely to become dependent upon the government for subsistence. 8 U.S.C. § 1182(a)(4); 8 C.F.R. § 213a.2(a). Immigrants who would be inadmissible for this reason may become admissible if a relative living in the United States is willing to petition for their admission and sign a Form I-864 Affidavit of Support. *See Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1023 (N.D. Cal. 2008); *see also* 8 U.S.C. § 1183a(a)(1). In 2010, Ernesto signed such an affidavit and attached it to Rosa's residency application. Dkt. 56-2. Rocio Brown ("Rocio"), the third-party defendant here, also signed an Affidavit of Support as a joint sponsor of Rosa. Dkt. 35-2, at 1. Per the

---

[1] The Court does not mean to be informal by using the parties' first names. Under Latin naming conventions, the Court understands that both parties would use "Flores" as a surname. To avoid the indeterminacy of "Mr. and Ms. Flores" and the anonymity of "plaintiff and defendant," the Court will refer to the parties by their first names.

standardized terms of an I-864 affidavit, Ernesto and Rocio each agreed to provide Rosa with "any support necessary to maintain . . . her at an income that is at least 125 percent of the Federal Poverty Guidelines for . . . her household size," until their obligations are terminated. Dkt. 13-1, at 4. The affidavits also allow Rosa to sue her sponsors if they did not fulfill their obligations. *Id.*

United States Customs and Immigration Services approved Rosa's application on October 15, 2010, and she became a legal resident of the United States. In 2018, she and Ernesto separated. They officially divorced on July 26, 2021. Rosa asserts that she is unemployed and lives with two school-aged sons who have special needs. She states that she supports herself with her children's social security income, food stamps, and student loans.

On December 12, 2022, Rosa brought this action against Ernesto, alleging that his failure to keep her above 125 percent of the Federal Poverty Guideline, as promised in the Affidavit of Support, constitutes breach of contract. She seeks back-owed support, beginning from the time of separation in August 2018, and ongoing specific performance under the Affidavit of Support.

**B. Procedural Background**

Shortly after filing her Complaint, Rosa moved for a preliminary injunction, requesting that the Court compel Ernesto to make monthly payments under the Affidavit of Support while the case is resolved. Dkt. 13, at 2. Ernesto timely opposed the motion, arguing that Rosa cannot succeed on the merits because: (1) his obligation under the Affidavit of Support has terminated since Rosa can be credited with forty qualifying quarters under the Social Security Act; (2) he satisfied his obligation when he transferred

his interest in the family home to Rosa; and (3) Rosa's failure to seek employment excuses his obligation. *See generally* Dkt. 25. Rosa filed a timely reply, addressing these arguments. Dkt. 28. Less than two weeks later, Ernesto filed a third-party complaint against Rocio, requesting that the Court require her to pay contribution to Ernesto for any amount he is found to owe Rosa under the Affidavit of Support. Dkt. 35.

Fifty-six days after being served with the motion for a preliminary injunction, Ernesto filed a second, significantly longer response in opposition to Rosa's motion for a preliminary injunction containing new reasons, arguments, and authorities. Dkt. 42. This second response, which is styled as an independent new pleading rather than an amendment to the first, addresses irreparable harm, the balance of the equities, and the public interest, where the first response does not. Ernesto also argues: (1) Rosa has at all times had enough income to remain above 125 percent of the federal poverty guidelines, (2) the transfer of the house was not a part of the divorce settlement and so it counted as support under the affidavit, and (3) Rocio is jointly and severally liable for the support payments. *Id.* Rosa moved to strike Ernesto's second response as impermissible under Local Rule 7.2(e)(1). Dkt. 43.

Later, Ernesto moved for summary judgment, asking the Court to find that his obligation under the Affidavit of Support had terminated. Dkt. 56. He filed a separate "Motion for Entry of Judgment" asking the Court to decide his summary judgment motion without a hearing. Rosa responded, stating her non-opposition to the request to decide the motion without a hearing. Dkt. 67.

MEMORANDUM DECISION AND ORDER - 4

## III. LEGAL STANDARD

**A. Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. Of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

A court may, on its own initiative, grant summary judgment to a nonmoving party if, drawing all inferences in favor of the moving party, there are no genuine issues of material fact, the moving party has been given reasonable notice that the sufficiency of his

or her claim will be in issue, and the nonmoving party is entitled to summary judgment as a matter of law. *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 654–55 (9th Cir. 2016).

**B. I-864 Affidavit of Support**

An I-864 Affidavit of Support is a binding contract between a signing sponsor and the United States Government. 8 U.S.C. § 1183a(a)(1)(B). As mentioned above, its purpose is to ensure that a family-based immigrant does not become a public charge upon entry into the United States. 8 U.S.C. § 1182(a)(4). Under an Affidavit of Support, the sponsored party is considered a third-party beneficiary, and possesses full enforcement rights. *Erler v. Erler*, 824 F.3d 1173, 1174 (9th Cir. 2016). Further, a sponsor and a joint-sponsor may be held jointly and severally liable for any unfulfilled obligations under an I-864. 8 U.S.C. § 1183a(f)(5); 8 C.F.R. § 213a.1.

Affidavits of Support are a "special breed of contracts." *Cyrousi v. Kashyap*, 386 F. Supp. 3d 1278 (C.D. Cal. 2019). As a general rule, traditional contract defenses are not available to a party seeking to terminate his or her obligations under an Affidavit of Support. *See, e.g., Id.*; *Asilonu v. Asilonu*, 550 F. Supp. 3d 282 (M.D.N.C. 2021); *Burkhalter v. Burkhalter*, 2020 WL 1659263 (C.D. Cal. Feb. 28, 2020); *Dorsaneo v. Dorsaneo*, 261 F. Supp. 3d 1052, 1054–55 (N.D. Cal. 2017), aff'd, 780 F. App'x 532 (9th Cir. 2019). Rather, termination of I-864 obligations requires a party to show that a terminating event has taken place. *Cyrousi*, 386 F. Supp. 3d at 1284.

Terminating events are set forth clearly in 8 C.F.R. § 213a.2(e)(2)(i), which states that a sponsor is relieved of his or her obligations when the sponsored immigrant: A)

becomes a U.S. citizen; B) works or may be credited with forty qualifying quarters of coverage under title II of the Social Security Act; C) loses lawful-permanent-resident status and departs the United States; D) becomes the subject of a new Affidavit of Support; or E) dies. The statutory language governing the second terminating event makes clear that a sponsored immigrant can be credited with "all of the qualifying quarters worked by a spouse of such alien during their marriage and [sic] the alien remains married to such spouse or such spouse is deceased." 8 U.S.C. § 1183a(a)(3)(B)(ii). Further, under the Social Security Act, which is expressly incorporated by reference in I-864 Affidavit of Support forms, a party may be credited with no more than four quarters of coverage in any single calendar year. 42 U.S.C. § 413(a)(2)(B)(vii).

## IV. ANALYSIS

Before beginning the substantive analysis, the Court will offer a word of caution. Neither party had local counsel present at the hearing as required by the local rules. Dist. Idaho Loc. Civ. R. 83.4(e) ("The designated local counsel must personally appear with the [pro hac vice] attorney on all matters heard and tried before this Court unless such presence is excused by the Court."). This rule ensures that all attorneys arguing before the Court have some reputational skin in the game. It prevents attorneys barred in distant jurisdictions from appearing, behaving badly, and then returning to their home states without meaningful consequences. It protects both the Court and the local bar. Upon learning of the parties' failure to bring local counsel, the Court's instinct was to vacate the hearing. To spare the parties the expense and delay of a rescheduled hearing, however—and against its better judgment—the Court allowed argument to proceed. Counsel is admonished to

familiarize themselves with the local rules before making an appearance.

Because the parties have conceded there are no material factual questions remaining in this case, and that a hearing is not necessary (see Dkts. 56, 61, 64), the Court will begin its analysis with summary judgment. Because this is the relief requested in Ernesto's Motion for Entry of Judgment, that motion is necessarily GRANTED.

**A. Motion for Summary Judgment**

Ernesto moves for summary judgment on Rosa's breach of contract claim. Rosa moves for a preliminary injunction obliging Ernesto to perform under his I-864 Affidavit. Though she does not independently move for summary judgment on her claims, Rosa's briefing raises no genuine dispute of material fact that would make continuing litigation necessary. Her response to Ernesto's summary judgment merely argues why, on the merits, summary judgment should not be awarded for Ernesto. It makes no argument that the standard for summary judgment has not been satisfied. In this procedurally unusual case, where the parties have peppered the docket with new (sometimes procedurally defective) motions before the Court has had time to address the old motions, the Court finds it appropriate, considering the respective postures of the parties, to treat the two primary motions before it as cross motions for summary judgment.

*1. Crediting Qualifying Quarters to a Spouse*

Here, neither party disputes that Ernesto signed a valid I-864 Affidavit of Support for Rosa. *See* Dkt. 14-1. Thus, the only legal issues before the Court are whether and when the obligations imposed by the Affidavit of Support were terminated. As a preliminary matter, because neither separation nor divorce are listed among the five terminating events

under § 213a.2(e)(2)(i), the parties appear to accept that the couple's separation and subsequent divorce did not terminate Ernesto's support obligations under the I-864. Rather, Ernesto argues that Rosa could be credited with forty qualifying quarters under the Social Security Act beginning in 2015. Such an accumulation of qualifying quarters *would* constitute a terminating event, pursuant to § 213a.2(e)(2)(i)(B). Rosa counters that, to date, she has not earned forty qualifying quarters independently, and that any of Ernesto's quarters that could have been credited to her during their marriage were stripped away when the parties divorced. In support of her argument, she points to the language of 8 U.S.C. § 1183a(a)(3)(B)(ii), which states that an immigrating person may be credited with the qualifying quarters worked by a spouse "during their marriage and the alien remains married to such spouse . . . ." *See also* 8 U.S.C. § 1645(2). She contends that because the couple is no longer married, the Court cannot now appropriately credit her with any of Ernesto's qualifying quarters.

Rosa relies heavily on *Aleman v. Glickman*, wherein the Ninth Circuit affirmed that after a marriage ends in divorce, a non-working spouse can no longer be credited with a working spouse's qualifying quarters for purposes of determining food-stamp eligibility. 217 F.3d 1191 (9th Cir. 2000). The Court does not dispute the conclusion of the Ninth Circuit; but neither does it find this conclusion helpful to Rosa. Section 213a.2(e)(2)(i) makes clear that support obligations imposed by an I-864 Affidavit of Support terminate *by operation of law* upon the happening of one of the five terminating events. Neither party contests that while the parties were married, Ernesto's qualifying quarters could be credited to Rosa. This means that despite their eventual divorce, if at any point *during* their marriage

MEMORANDUM DECISION AND ORDER - 9

the combined qualifying quarters of the couple eclipsed forty, Ernesto's obligations under the Affidavit of Support would terminate automatically.

     *2. The Limiting Language of the Social Security Act*

     According to Ernesto's calculations, Rosa reached the forty-quarter mark near the end of 2015. Dkt. 56-1, at 5. If this were true, Ernesto would owe Rosa nothing under her breach-of-contract claim since Rosa's request for damages begins in August 2018. Ernesto arrived at his conclusion by crediting Rosa with two qualifying quarters in 2009, four in 2010, eight in 2011, 2012, 2013, and 2014, and seven in 2015. Dkt. 56-1, at 10. A brief explanation of his possible reasoning follows.

     In 2009, Ernesto personally qualified for four quarters while Rosa apparently did not work. While his reasoning is not explicit, Ernesto may have credited Rosa with only two quarters for 2009 because the couple was married for only half of the year. The Court will address the impropriety of that calculation later.

     In 2010, Ernesto earned four qualifying quarters while Rosa was not employed. Thus, a four-quarter credit to Rosa is appropriate for that year.

     From 2011–2016, it appears that Rosa began working enough to accumulate between three and four qualifying quarters per year on her own. *Id.* Because Ernesto individually earned four qualifying quarters in each of those years, he credits Rosa with seven or eight quarters per year during that span—summing her qualifying quarters *and* his own. The parties disagree about whether this summation is appropriate. Rosa argues that the Social Security Act—which is incorporated by reference in the statutory language governing Affidavits of Support—allows for a maximum of four qualifying quarters per

MEMORANDUM DECISION AND ORDER - 10

individual, per calendar year. 8 U.S.C. § 1183a(a)(3)(A) & (3)(B) (Affidavit of Support Requirements); 42 U.S.C. § 413(a)(2)(B)(vii) (Social Security Act) ("[N]o more than four quarters of coverage may be credited to any calendar year after 1977."); *see also* 20 C.F.R. § 404.143(a) ("[W]e cannot credit you with more than four [qualifying quarters] for any calendar year.").

Ernesto counters that the quarter-limiting language of the Social Security Act applies exclusively in social-security settings, apparently relying on language from an Ohio state appellate court applying federal law. *Davis v. Davis*, 970 N.E.2d 1151, 1158–59 (Ohio Ct. App. 2017). While caselaw on quarter calculation is scarce, the Court can confidently reject the narrowing interpretation proposed by Ernesto as unpersuasive for the reasons explained below.

The statutory requirements governing the termination of Affidavit-of-Support obligations are found at 8 U.S.C. § 1183a(a)(3). Those requirements clearly incorporate the Social Security Act by reference. *See, e.g.,* 8 U.S.C. § 1183a(a)(3)(A) ("An affidavit of support is not enforceable after such time as the alien (i) has worked 40 qualifying quarters of coverage *as defined under title II of the Social Security Act* . . . .") (emphasis added). The Social Security Act, in turn, limits the total number of qualifying quarters with which an individual may be credited per year to four. 42 U.S.C. § 413(a)(2)(B)(vii). The Court understands this language to apply *both* to the qualifying quarters one may *work* in a year *and* to the qualifying quarters with which an individual may be *credited* by way of a working spouse. In other words, regardless of whether someone works for their qualifying quarters, or receives them from a spouse, he or she cannot be credited with more than four

quarters during the same one-year period.

This interpretation is consistent with other courts in this circuit. For example, in *Tsanev v. Tsanev*, the U.S. District Court for the Western District of Washington ruled on a complaint similar to the one brought by Rosa. 2022 WL 3566759 (W.D. Wash. Aug. 18, 2022). There, a husband signed an Affidavit of Support on behalf of his immigrating wife. *Id*. at *1. Three years later, the couple divorced. *Id.* After the husband-sponsor stopped providing support under the affidavit, the wife sued, requesting back-owed support and specific performance of the I-864. *Id*. The husband claimed that the wife had already accumulated forty qualifying quarters of coverage under the Social Security Act. *Id.* at *2. Significantly, the husband's argument rested on his crediting his wife with six to eight qualifying quarters each year. *Id.* at *3. That court rejected the husband's argument, stating that crediting someone with more than four quarters in a calendar year is "not statutorily permissible" under § 42 U.S.C. 413(a)(2)(B)(vii). *Id.* Courts outside of this circuit have come to the same conclusion when faced with similar requests. *See Carlborg v. Tompkins*, 2010 WL 4553558, *3 (W.D. Wis. Nov. 3, 2010) ("'Qualifying quarters' are counted (*up to four each year*) according to the amount of income a person receives . . . .") (emphasis added); *see also Matloob v. Farhan*, 2014 WL 1401924 *n.4 (D. Md. Apr. 9, 2014) ("The majority of sponsored immigrants will have to work ten years to meet the 40 quarters requirement, as a maximum of four quarters can be earned in a year.") (quoting *Cheshire v. Cheshire*, 2006 WL 1208010, at *4 (M.D. Fla. May 4, 2006).

Applying federal law, the Court of Appeals of Ohio has twice interpreted the quarter-limiting language of the Social Security Act to be inapplicable in calculating

qualifying quarters under an I-864 Affidavit of Support. *Davis*, 970 N.E.2d at 1151; *Akers v. Akers*, 102 N.E.3d 648 (Ohio Ct. App. 2017).[2] This interpretation allows a petitioning immigrant to be credited with five to eight qualifying quarters per year as urged by the husband in *Tsanev* and by Ernesto in the instant case. The Court first notes that these decisions are non-binding and are, therefore, at best, only persuasive. However, even considering the decisions on their merits, the Court finds the interpretation of the Ohio state appellate court to be inconsistent with both the text of the Social Security Act, and with the purpose of the Immigration and Nationality Act.

The limiting language of the Social Security Act states clearly "no more than four quarters of coverage may be credited to any calendar year after 1977." 42 U.S.C. § 413(a)(2)(B)(vii). Circumventing this limitation, the court in *Davis* interpreted the language to apply only to "federal old-age, survivors, and disability insurance benefits,"— benefits governed by the Social Security Act. *Davis*, 970 N.E. 2d, at 1158–59. The *Davis* court provided no justification for its narrow interpretation, apparently ignoring the fact that the statute governing Affidavits of Support expressly incorporates the Social Security Act by reference—limitations and all. Oddly, the *Davis* court reasoned further that the four-quarter limit applies only to qualifying quarters *earned* and not to qualifying quarters with which one may be *credited*. *Id.* at 1159. The issue with that interpretation is that the Social Security Act specifically uses the word *credited*, and not *earned*, in its limiting language.

---

[2] The court in *Akers* did not discuss its rationale for ignoring the four-quarter yearly limit, apparently relying on the interpretation of the *Davis* court as authoritative. Therefore, the Court will focus its discussion on the opinion of the *Davis* court.

MEMORANDUM DECISION AND ORDER - 13

42 U.S.C. § 413(a)(2)(B)(vii).

The Court is more persuaded by the dissent in *Davis*, which argued that by placing a limit on qualifying quarters per year, Congress clearly indicated its intent that a sponsor who signs an I-864 Affidavit of Support "guarantees that the alien be financially supported at a minimal degree so as not to become a drain on the public weal for 40 quarters, ten years." *Davis*, 970 N.E. 2d, at 1162–63 (Singer, P.J., dissenting). The Court agrees that allowing I-864 sponsors to "double dip" in calculating quarters substantially reduces their assumed responsibilities and unjustifiably increases the risk of the sponsored immigrant becoming a public charge. *Id.* Because such an outcome is expressly contrary to the statutory text and to Congressional intent, the Court declines to follow the majority in *Davis*. It agrees with its sister-district courts (within the Ninth Circuit and without) that have held the limiting language is, in fact, limiting. Accordingly, the Court finds Ernesto's attribution of more than four qualifying quarters to Rosa per year for the years 2011–16 and 2018–20 inappropriate. *See* Dkt. 56-1, at 10.

3. *The Termination of Ernesto's Obligation*

The statutory requirements for a sponsor's affidavit of support are clear that a petitioning immigrant may be credited with "all of the qualifying quarters worked by a spouse of such alien during their marriage . . . ." 8 U.S.C. § 1183a(a)(3)(B)(ii). Having come to an understanding regarding the crediting of qualifying quarters to a non-working spouse, the Court may now determine when Rosa could be properly credited with forty quarters, leaving Ernesto's obligations fulfilled. The Social Security Act defines a "quarter of coverage" as "each portion of the total wages paid and the self-employment income

credited to an individual in a calendar year which equals the amount required for a quarter of coverage in that calendar year." 42 U.S.C. § 413(a)(2)(A)(ii) (cleaned up); *see also* 20 C.F.R. § 404.143. Stated more clearly, "quarters are calculated based on the annual income, no matter when during the year a person did the work." *Cyrousi*, 386 F. Supp. 3d, at 1286. The amount of income required for a quarter of coverage is set each year by the Commissioner of Social Security and is published in the Federal Register. 42 U.S.C. § 413(d)(2).

The parties do not dispute that Ernesto earned four qualifying quarters in each year that the parties were married. Dkt. 56-1, at 10; Dkt. 60, at 17. As mentioned previously, Ernesto's calculations credit Rosa with only two qualifying quarters for the year 2009 (presumably because they were married in the middle of that year). While this would serve to Rosa's benefit if correct, the Court finds this calculation inaccurate. The Social Security Act makes clear that qualifying quarters are credited based on earnings, not time. 42 U.S.C. § 413(a)(2)(A)(ii). Ernesto's earnings, even when halved, easily eclipse four times the amount required for one quarter of coverage in 2009—$1,090. Thus, Rosa may be properly credited with four qualifying quarters for the year 2009. This conclusion is supported by Rosa's own calculations. Dkt. 60, at 17.

Rosa can also be credited with four qualifying quarters for each subsequent year, meaning she reached the forty-quarter threshold in the fourth quarter of 2018. The Court arrives at this conclusion by applying the guidance contained in 20 C.F.R. § 404.146 which states that an individual cannot be credited with a qualifying quarter for a calendar quarter that has not begun. The Social Security Act defines a calendar quarter as "a period of three

MEMORANDUM DECISION AND ORDER - 15

Case 4:22-cv-00498-DCN  Document 72  Filed 10/30/23  Page 16 of 18

calendar months ending on March 31, June 30, September 30, or December 31." 42 U.S.C. § 413(a)(1). This means that regardless of Ernesto's earnings in 2018, the earliest date on which Rosa could be credited with a fourth quarter for that year is October 1st, the first day of 2018's final quarter. Because Ernesto's earnings again exceeded four times the amount required for one quarter of coverage in 2018, the Court finds that Rosa reached the forty-quarter mark—officially terminating Ernesto's Affidavit-of-Support obligations—on October 1, 2018. The parties do not dispute that the couple separated in August of 2018. Thus, from September 1, 2018, to October 1, 2018, Ernesto had support obligations under the I-864 which were not fulfilled. Additionally, because the Court does not know the exact date of separation, Ernesto may have unfulfilled obligations from August 2018. The Court will require additional information to complete its ruling here but finds there are no disputed material facts precluding summary judgment.

      *4. Joint and Several Liability with Rocio*

      As a final matter, the Court turns to Ernesto's third-party complaint against Rocio. Under 8 C.F.R. § 213a.1, a "joint sponsor" is any statutorily qualified individual who submits an affidavit of support alongside the affidavit submitted by a sponsor. A joint sponsor typically files an Affidavit of Support when the primary sponsor's household income alone is not sufficient to maintain the petitioning immigrant above the minimum statutory income. *Id.* Significantly, a joint sponsor accepts joint and several liability with the primary sponsor to ensure that the petitioning immigrant is kept at or above 125 percent of the federal poverty level. *Id.*

      Ernesto and Rocio agree that Rocio filed an I-864 Affidavit of Support alongside

the affidavit filed by Ernesto. *See* Dkt. 35, at 6; Dkt. 50, at 4. On that affidavit, Rocio marked that she was filing as a joint sponsor of Rosa. Dkt. 35-2, at 1. Rocio admits as much in her response to Ernesto's third-party complaint, and she makes no compelling argument that her obligations under the affidavit have terminated.[3] Dkt. 50, at 4–5. Thus, Rocio is jointly and severally liable for any damages owed by Ernesto to Rosa.

Under the Restatement (First) of Restitution § 81 (1937), "a person who has discharged more than his proportionate share of a duty owed by himself and another . . . is entitled to contribution from the other . . . ." *See also In re Maple-Whitworth, Inc.*, 375 B.R. 558 (B.A.P. 9th Cir. 2007), *aff'd in part, rev'd in part on other grounds*, 556 F.3d 742 (9th Cir. 2009), *opinion corrected*, 559 F.3d 917 (9th Cir. 2009). Here, Rosa has chosen to sue only Ernesto, and not Rocio, for breach of I-864 obligations. This is appropriate because the I-864 allows for several liability—meaning Rosa may hold one party liable for the full support costs due under the I-864, even if multiple parties have assumed support obligations. However, both parties are liable for the full amount required under by their I-864 affidavits. And, as previously noted, that full amount will be determined shortly.

## V. CONCLUSION

The Court finds that Ernesto's obligations under I-864 automatically terminated once forty qualifying quarters, as defined by the Social Security Act, were credited to Rosa. That occurred in October of 2018. Rosa must submit, within fourteen days, a short document (not to exceed 5 pages) outlining her income, if any, during August, September,

---

[3] Rocio raises five affirmative defenses in her answer. Dkt. 50, at 4–5. None are persuasive. Nor do any of her arguments absolve her of her obligations under her I-864 Affidavit of Support.

and October 2018, and stating the date on which she and Ernesto separated. The Court will also entertain her suggestion—based upon its analysis above—of the amount owed. Ernesto will then have seven days to file a short (not to exceed 3 page) response to Rosa's documentation outlining (again, pursuant to the Court's findings) the amount he believes he owes Rosa. The Court will then calculate the amount of damages and enter judgment accordingly.

## VI. ORDER

The Court HEREBY ORDERS:

1. Rosa's Motion for Preliminary Injunction (Dkt. 13) and Motion to Strike (Dkt. 43) are DENIED as MOOT.

2. Ernesto's Motion for Summary Judgment (Dkt. 56) is GRANTED in PART. As a result, summary judgment is also partially GRANTED in favor of Rosa as outlined above.

3. Ernesto's Motion for Entry of Judgment (Dkt. 66) is GRANTED.

4. Once the Court receives the requested information, it will enter judgment pursuant to Federal Rule of Civil Procedure 58.

DATED: October 30, 2023

David C. Nye
Chief U.S. District Court Judge